1  **CANDIS MITCHELL**
   California State Bar No. 242797
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Telephone: (619) 234-8467
4  Candis_Mitchell@fd.org

Attorneys for Mr. Julio Cesar Nunez-Gomez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LOUISA S. PORTER)**

| | |
|---|---|
| UNITED STATES OF AMERICA,            ) | Case No.   08cr1559-H |
|                                      ) | |
|         Plaintiff,                   ) | DATE:   June 10, 2008 |
|                                      ) | TIME:   2:00 P.M. |
| v.                                   ) | |
|                                      ) | **DEFENDANT'S RESPONSE AND** |
| **JULIO CESAR NUNEZ-GOMEZ**,         ) | **OPPOSITION TO MATERIAL WITNESS'** |
|                                      ) | **MOTION FOR VIDEOTAPED** |
|         Defendant.                   ) | **DEPOSITIONS** |
|                                      ) | |

**I.**

**STATEMENT OF FACTS**[1]

**A.    The Stop and Arrest of Mr. Nunez-Gomez**

On May 2, 2008, National Guard officers manning the West Scope area observed seven people on bikes traveling through an area known as Goat Canyon. At 3:00 a.m. Border Patrol Agent Cooper responded to the area, and along with an unnamed agent, detained the seven individuals. It is alleged that Mr. Nunez-Gomez was detained separately from the other six individuals. When he was detained, Mr. Nunez-Gomez allegedly made statements that he had no documents to legally enter the United States.

---

[1] Unless otherwise stated, the "facts" referenced in these papers come from the complaint. Defense counsel has yet to receive discovery in this case.

1  The complaint then states that Mr. Nunez-Gomez as well as the other individuals were arrested at 2:00 a.m.,
2  an hour before the National Guard alerted the border patrol agents that they were spotted in Goat Canyon.

**B.    Interrogation**

At the border patrol station, it is alleged that Mr. Nunez-Gomez was read his Miranda rights and questioned regarding the incident. Mr. Nunez-Gomez made statements regarding his involvement in the offense. He indicated that he is a foot guide in the Imperial Beach area working for "El Gallo." Mr. Nunez-Gomez made statements admitting payment of $200.00 per person brought in. After bringing the individuals into the United States on bicycle, he was planning on taking them to Hollister Road where another individual would take them to a load house.

It is alleged that all the material witnesses were to pay between $2000 and $2500 to br brought into the United States and identified Mr. Nunez-Gomez as their guide.

**C.    Trial**

On May 14, 2008, Mr. Nunez-Gomez was indicted for encouraging and inducing an alien to enter and reside in the United States in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and (B)(iii).

Counsel for the material witnesses filed a motion requesting a video deposition and the witnesses release to allow for removal of material witnesses to Mexico. Defense counsel on behalf of Mr. Nunez-Gomez objects to the release of the material witness, and requests that the Court either detain them or modify their bond so they can remain legally in the United States until the trial is over or the case is resolved.

**II.**

**THE MOTION FOR THE MATERIAL WITNESSES' DEPOSITION SHOULD BE DENIED BECAUSE THERE IS NO SHOWING OF UNAVAILABILITY OF THE WITNESS AND THE MOTION IS MADE PREMATURELY**

Title 18, United States Code § 3144 governs the detention of individuals who may give testimony material to a criminal proceeding. This section provides that where the witness is not able to meet the conditions of the bond set by the court and is detained, the court may order the deposition of the witness where (1) deposition may secure the testimony of the witness and (2) further detention is not necessary to prevent a failure of justice. See 18 U.S.C. § 3144. In this case, the material witnesses have moved for videotaped depositions pursuant to 18 U.S.C. § 3144. Although a deposition may secure the material

1   witnesses' testimony, this Court should order the material witnesses' continued detention in order to protect
2   Mr. Nunez-Gomez's constitutional rights. In the alternative, this Court should modify the conditions of
3   release so that the material witnesses can remain in the United States until this case is resolved.

4   Depositions in criminal cases are generally disfavored for several reasons, including the threat to the
5   defendant's Sixth Amendment confrontation rights. United States v. Drogoul, 1 F.3d 1546, 1551-52
6   (11th Cir. 1993). All defendants have the right to confront witnesses against them. See U.S. CONST.
7   Amend. VI. The Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), reaffirmed
8   this principle — developed at common law and incorporated into the Confrontation Clause of the
9   Sixth Amendment by the Framers — that testimonial statements may not be admitted against a defendant
10  where the defendant has not had the opportunity to cross-examine the declarant. This is true even where
11  the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of
12  trustworthiness." Id. at 60.

13  In Crawford, the Supreme Court noted that the Sixth Amendment was drafted in order to protect
14  against the "civil-law mode of criminal procedure" and "its use of *ex parte* examinations as evidence
15  against the accused." Id. at 50. Such *ex parte* examinations implicate Sixth Amendment concerns because
16  they are "testimonial" in nature. The "text of the Confrontation Clause reflects this focus" and applies to
17  "witnesses against the accused - in other words, those who bear testimony." Id. at 51 (internal quotations
18  omitted). Although the Supreme Court declined to define "testimonial" evidence, they noted that an
19  "accuser who makes a formal statement to government officers bears testimony in a sense that a person who
20  makes a casual remark to an acquaintance does not." Id. The Confrontation Clause does not permit such
21  testimonial statements to be admitted at trial against an accused without the constitutionally prescribed
22  method of determining reliability, *i.e.*, confrontation. Id. at 61-65. In other words, "[w]here testimonial
23  evidence is at issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior
24  opportunity for cross-examination." Id. at 68.

25  Despite Crawford's broad prohibition of testimonial statements at trial where the defendant has no
26  opportunity to confront the witness, there are some situations in which depositions may nonetheless be
27  taken. In these situations, the burden is on the moving party to establish *exceptional circumstances*
28  justifying the taking of depositions. Drogoul, 1 F.3d 1546 at 1552 (citing United States v. Fuentes-Galindo,

1  929 F.2d 1507, 1510 (10th Cir. 1991)). The trial court's discretion is generally guided by consideration of
2  certain "critical factors," such as whether (1) the witness is unavailable to testify at trial; (2) injustice will
3  result because testimony material to the nonmoving party's case will be absent; and (3) countervailing
4  factors render taking the deposition unjust to the nonmoving party. Id. at 1552.

5      When considering this issue, this Court must balance the interests of the government and the
6  accused, as well as the interests of the material witnesses. Although the material witnesses may have a
7  liberty interest at stake, that interest is outweighed by Mr. Nunez-Gomez's weighty constitutional rights
8  of confrontation and due process of law. The Confrontation Clause serves several purposes: "(1) ensuring
9  that witnesses will testify under oath; (2) forcing witnesses to undergo cross-examination; and (3)
10 permitting the jury to observe the demeanor of witnesses." United States v. Sines, 761 F.2d 1434, 1441
11 (9th Cir. 1985). It allows the accused to test the recollection and the conscience of a witness through cross-
12 examination and allows the jury to observe the process of cross-examination and make an assessment of
13 the witness' credibility. Maryland v. Craig, 497 U.S. 836, 851 (1989); Ohio v. Roberts, 448 U.S. 56, 63-64
14 (1980). In a case such as the one, where the material witnesses have received the benefit of the Government
15 refraining from pressing criminal charges in return for their testimony against the accused,[2] it is important
16 that the jury see the reaction and demeanor of the material witnesses when they are confronted with
17 questions that will bring out such facts in order for the jury to decide whether to believe their statements
18 and/or how much credit to give to their testimony. The jury's ability to make such an assessment would
19 be compromised by a videotaped deposition because the tape may not preserve subtle reactions of the
20 witnesses under cross-examination that may favor the accused.

21     Moreover, the decision to grant video depositions is governed by Federal Rule of Criminal
22 Procedure 15(a) which states that a material witnesses' deposition may be taken only upon a showing of
23 "exceptional circumstances." United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998). The material
24 witnesses here, however, has failed to demonstrate any "exceptional circumstances" justifying the

---

[2] This Court should be mindful of the fact that the only reason the Government has not charged the material witnesseses with a crime is that the Government seeks to introduce their testimony against the accused. The material witnesseses could have been charged with illegal entry under 8 U.S.C. § 1325, which carries a maximum sentence of six (6) months imprisonment. Needless to say, the Government would not concern itself with the material witnesseses' liberty interests had it, in fact, charged them with this offense.

1  impingement of Mr. Nunez-Gomez's Sixth Amendment rights. Rather, the only hardship alleged by the
2  material witnesses is that they entered the United States to find work to support family members at home
3  in Mexico. See Mayer Decl. at 4. Nowhere does Mr. Alaniz-Moralez, Ms. Alazniz-Morales, or
4  Mr. Salazar-Flores state that there are not *alternative* means of economic support for their families. There
5  is no mention of other family members that may or may not be able to help the his immediate family
6  financially. Furthermore, Mr. Alaniz-Moralez, Ms. Alazniz-Morales and Mr. Salazar-Flores were more
7  than willing to leave their family members behind to come to the United States illegally with *no* guarantee
8  that they would find a job that would allow them to send any money back to Mexico to support the people
9  to whom they are now so desperate to return to.

10  Mr. Alaniz-Moralez, Ms. Alazniz-Morales, and Mr. Salazar-Flores argued that under Torres-Ruiz
11  v. United States District Court, 120 F.3d 933, 935 (9th Cir. 1997), the fact that their continued incarceration
12  constitutes an economic hardship for them and their families is sufficient to satisfy their burden of proof
13  under Rule 15(a). Almost any period of incarceration, by definition, will result in some sort of financial
14  hardship to that individual and his family. Economic hardship alone cannot constitute extraordinary
15  circumstances. Rather, as the Court in Torres-Ruiz made clear, extraordinary circumstances require
16  something more: in that case, "tremendous hardship." 120 F.3d at 936. In particular, the material
17  witnesses in Torres-Ruiz were both "the sole support for their respective families in Mexico." Id. at 935
18  (emphasis added). In the instant case, however, the material witnesses cannot establish such tremendous
19  hardship as none have alleged that there are not others who will be able to support the clients family while
20  in custody. Mayer Decl. at 4-5. Nothing is mentioned as to the extraordinary need or burden placed on his
21  family by being in custody. The declaration simply sums up the regrettable but usual difficulties one might
22  expect of being incarcerated. Obviously the material witnesses in this case, no less than Mr. Nunez-Gomez,
23  would want to be free to help supplement their families with economic support, but absent tremendous
24  facts, hardship alone is not sufficient to establish extraordinary circumstances warranting deposition
25  testimony.

26  Furthermore, this Court should consider the unique circumstances faced by the Ninth Circuit in
27  Torres-Ruiz. Unlike this case, in Torres-Ruiz the material witnesses' motion for videotape deposition was
28  unopposed by the defendant. 120 F.3d at 934-35. Perhaps more importantly, in Torres-Ruiz, the defendant

entered a guilty plea less than two weeks after the motion for deposition was made, indicating that the case was already near disposition when the motion was made. Id. at 936-37. As of now, however, the instant case stands in a much different procedural posture.

Mr. Nunez-Gomez has pled not guilty to all counts of the Indictment. The defense has yet to conduct investigation **or even receive discovery** in this case. In short, it is very early in the case. To require Mr. Nunez-Gomez to cross-examine the material witnesses at the current juncture of the proceedings would severely prejudice his future trial rights. Any cross examination of the material witnesses at this point would be at best meaningless, and at worst ineffective and potentially harmful to Mr. Nunez-Gomez and his defense.

Finally, if the Court determines that the issue must be addressed at this point in time, the Court can easily resolve the issue by modifying the conditions of release for the material witnesses so that his continued detention would be unnecessary. Conditions of release for material witnesses is governed by 18 U.S.C. § 3142. Under this section, "[t]he judicial officer **shall** order the pretrial release of the person on personal recognizance, or upon execution of an unsecured personal appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(b). Moreover, the Bail Reform Act states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). This mandate, combined with the preference for release upon one's own recognizance, strongly suggests that the proper remedy for the material witnesses in this case is a motion to modify the terms of their release, not for the draconian remedy of immediately ordering a videotaped deposition and deporting the material witnesses to Mexico, especially not at this very early stage of the proceedings.

The material witnesses here alleges that they cannot secure a personal surety able to post an appearance bond. Nowhere, however, do the material witnesses state their unwillingness to remain in the United States during the pendency of this case. This Court can, and should, modify the material witnesses' bonds to allow them to re-gain their freedom, while at the same time safeguarding Mr. Nunez-Gomez's Sixth Amendment rights. The material witnesses have no incentive not to come back to court to testify. The material witnesses are not being charged with a crime. The material witnesses have no incentive to flee the country. Indeed, if the statement of facts in support of the complaint in this case is to be believed,

these material witnesses were prepared to pay money to be smuggled illegally into the United States by friends in the United States. Therefore, they obviously wants to remain in this country, fully within the subpoena power of the Court.

## III.

## CONCLUSION

For the foregoing reasons, the Mr. Nunez-Gomez respectfully requests that this Court deny the material witnesses' motion for a videotaped deposition.

Respectfully submitted,

Dated: May 28, 2008

*s/ Candis Mitchell*
**CANDIS MITCHELL**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Nunez-Gomez